IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

EDWIN R. JONAS III, and BLACKTAIL
MOUNTAIN RANCH CO., L.L.C., a
Nevada limited liability company,

        Plaintiffs,

    vs.

LINDA B. JONAS, QUENTIN M.
RHOADES, CRAIG MUNGAS,
SULLIVAN, TABARACCI &
RHOADES, P.C., JAMES DORMER,
MONTANA LIVESTOCK AUCTION,
INC. and GARDNER AUCTION CO.,
INC.,

        Defendants.

CV 13-90-M-DWM-JCL

ORDER AND
FINDINGS &
RECOMMENDATION

This matter comes before the Court on Defendants' motions to dismiss and

several other pretrial motions. The motions should be granted in part and denied

in part as set forth below. When all is said and done, this case should be dismissed

in its entirety because Plaintiffs' claims against several of the Defendants are

barred either by the *Rooker-Feldman* doctrine, res judicata, or principles of

-1-

collateral estoppel, and the remaining Defendants are immune from suit.

## I. **Background**

Plaintiff Edwin R. Jonas III ("Jonas") and Defendant Linda B. Jonas

("Linda") divorced in New Jersey in 1990, and have been mired in litigation ever

since. That litigation has spanned the courts in three states, including New Jersey,

Florida, and Montana, and has resulted in a number of filings, judicial orders, and

opinions. For purposes of resolving the pending motions, Jonas and the

Defendants have respectively requested that this Court take judicial notice of

several of those filings, orders, and opinions pursuant to Federal Rule of Evidence

201. Dkts. 16, 25, 47, 52.

A court may take judicial notice of facts that are "not subject to reasonable

dispute" because they are either (1) "generally known within trial court's

territorial jurisdiction; or (2) can be accurately and readily determined from

sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

Generally speaking, this means that the court may take judicial notice of matters of

public record. *Lee v. City of Los Angeles*, 250 F.3d 668, 888-89 (9th Cir. 2001).

More specifically, a court may take judicial "notice of proceedings in other courts,

both within and without the federal judicial system, if those proceedings have a

direct relation to matters at issue." *United States ex rel. Robinson Rancheria*

*Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992).

Jonas asks this Court to take judicial notice of the following items: (1) two decisions by the New Jersey Superior Court Appellate Division and one of Linda's appellate briefs; (2) a transcript of proceedings before the New Jersey Superior Court Chancery Division in May 2006; and (3) a decision issued by the Disciplinary Review Board of the New Jersey Supreme Court in September 2005. Dkts. 25, 47. Defendants do not object to Jonas's request for judicial notice or dispute the authenticity of the documents he has submitted – all of which are properly subject to judicial notice.

Defendants Craig Mungas, James Dormer, Montana Livestock Auction, Inc., and Gardner Auction Co., Inc. ("the Receiver Defendants") in turn ask the Court to take judicial notice of various orders, opinions, pleadings, and other filings in the New Jersey, Florida, and Montana state court litigation between Jonas and Linda. Dkt. 16, 52. Jonas objects on the ground that the accuracy of those documents "can be reasonably questioned based upon mistake of law and facts." Dkts. 24, 53. Apparently, Jonas takes the position that the state court orders, opinions, and other items are not entitled to judicial notice because they are legally and factually incorrect.

Jonas's objections are misplaced. This Court may, and hereby does, take

judicial notice of the state courts orders, opinions, and other filings for the limited purpose of evaluating their preclusive effect and setting forth the procedural background and context of this litigation. *See e.g. Reyn's Psta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006); *Manufactured Home Communities Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005). Because that procedural background is quite lengthy, only those facts that relevant to the Court's analysis are set forth here.

In May 2006, a New Jersey superior court entered judgments against Jonas for unpaid child support, alimony, attorneys fees, and other obligations following his divorce from Linda. Linda subsequently sought to have the 2006 New Jersey judgments enforced in Montana pursuant to the Uniform Enforcement of Foreign Judgment Act, Mont. Code Ann. §§ 25-9-501 et seq. Linda retained Defendants Quentin M. Rhoades ("Rhoades") and the law firm of Sullivan, Tabaracci & Rhoades ("Sullivan Tabaracci") (collectively "the Attorney Defendants") to represent her in her lawsuit to enforce and execute on the foreign judgments. On December 4, 2009, she filed a Notice of Filing Foreign Judgment in the Montana Twentieth Judicial District Court, Lake County, along with copies of the 2006 New Jersey judgments, which totaled $695,476.97, plus $147,205.35 in interest.

In December 2009, Linda filed a motion seeking to satisfy the New Jersey

judgments with Jonas's interest in Blacktail Mountain Ranch Company, LLC ("Blacktail Mountain"), which is a Nevada limited liability corporation licensed to do business in Montana. She sought a charging order, the appointment of a receiver, the foreclosure of Jonas's distributional interest in Blacktail Mountain, and the judicial dissolution, and winding up, of Blacktail Mountain. Jonas opposed the motion on the ground that Linda had already received transfers of money and property sufficient to satisfy the New Jersey judgments.

On February 1, 2010, the Montana district court issued a writ of execution against Jonas in the amount of $1,091,391.21. Two days later, on February 3, 2010, the court issued a charging order and an order for the appointment of a receiver, foreclosure of the lien, and for the dissolution of Blacktail Mountain, with the proceeds being used to satisfy the foreign judgments. The court appointed Defendant Craig Mungas as receiver, and Mungas contracted with the three other Receiver Defendants – James Dormer, Montana Livestock Auction, and Gardner Auction – to assist with the sale of Blacktail Mountain's assets.

The district court denied Jonas's subsequent motions for reconsideration of the charging and receivership orders because such motions are not allowed under Montana law, and because no supporting briefs had been filed. Jonas appealed the order denying his motions for reconsideration, and the Montana Supreme Court

affirmed. *Jonas v. Jonas*, 2010 WL 4527053 (Mont. 2010) (*Jonas I*). The Court agreed that Jonas's motions for reconsideration were procedurally improper, and also held he was barred by res judicata from relitigating his claim that the 2006 New Jersey judgments had already been satisfied. *Jonas I*, 2010 WL 4527053 *2.

The case was remanded and Jonas filed a motion for relief from the 2006 New Jersey judgments pursuant to Mont. R. Civ. P. 60. Jonas again challenged the charging order on the ground that the New Jersey judgments had already been satisfied. The district court denied the Rule 60 motion, and Jonas appealed. *Jonas v. Jonas*, 2012 WL 1699951 (Mont. 2012) (*Jonas II*). Once again, the Montana Supreme Court affirmed, explaining that Jonas was "precluded by the principles of res judicata from repeating his challenges to New Jersey's 2006 judgment in the courts of Montana." *Jonas II*, 2012 WL 169951 *2.

The case was remanded again, and Jonas moved under Rule 60 to vacate the February 3, 2010, charging and receivership orders. This time Jonas argues that the orders were entered ex parte, that the receiver was not statutorily eligible, and that the seizure and sale of Blacktail Mountain's assets violated Montana and Nevada law governing limited liability corporations. The district court denied the motion based on the law of the case doctrine, and in October 2012, Jonas appealed to the Montana Supreme Court for a third time.

On July 23, 2013, the Montana Supreme Court affirmed the district court's order denying Jonas's motion to set aside the charging order and appointment of the receiver. *Jonas v. Jonas*, 2013 WL 3810598 (Mont. 2013) (*Jonas III*). The Court held that because Jonas "failed to avail himself of several opportunities to challenge the charging order and appointment of receiver on the grounds he now raises," he had waived his right to do so and the charging order had become "the law of the case, binding [Jonas] thereby." *Jonas III*, 2013 WL 3810598 *4.

Jonas filed his pro se complaint in this case two months before the Montana Supreme Court issued its decision in *Jonas III*.[1] Jonas alleges the following claims on his own behalf, and on behalf of Blacktail Mountain: (1) a claim against Linda for breach of fiduciary duty; (2) a claim against Linda, Rhoades, and Mungas for fraud and conspiracy to commit fraud; (3) a claim against Linda for conversion, misappropriation, and embezzlement; (4) legal malpractice claims against Rhoades and Sullivan and Tabaracci; (5) claims under 42 U.S.C. § 1983 against Linda and the Receiver Defendants, and; (6) a wrongful conversion claim

---

[1]In January 2013, Jonas initiated a related action in this Court against his counsel in the Montana state court action and Judge Charles B. McNeil, the state court judge who presided over that case *Edwin Jonas v. Ronald Waterman et. al*, CV-13-16-M-DLC-JCL (Dkt. 1).

against the Receiver Defendants.[2]  Dkt. 9.

All Defendants have moved to dismiss the Amended Complaint based on the *Rooker-Feldman* doctrine, the domestic relations exception to federal jurisdiction, and the doctrines of res judicata and collateral estoppel.   The Receiver Defendants have also filed a motion to dismiss based on absolute immunity.  There are a variety of other motions pending as well, including the Receiver Defendants' renewed motion to dismiss Blacktail Mountain, Jonas's motion to disqualify defense counsel, Linda's motion to set aside the entry of default, and Jonas's motion for Rule 11 sanctions.

## II.   Receiver Defendants' Renewed Motion to Dismiss Claims of Blacktail Mountain Ranch, LLC

Jonas, acting pro se, is attempting to bring this action not only on his own behalf, but also on behalf of Blacktail Mountain.  He has consistently signed the pleadings and other filings both in his individual capacity and in his capacity as

---

[2]  On August 16, 2013, Jonas filed a Second Amended Complaint with leave of Court.  Dkt. 70.  The amended pleading adds Rhoades' co-counsel Robert Erickson as an Attorney Defendant, and real estate agent Steve Stelling, individually and doing business as Stelling & Associates, as a Receiver Defendant. Dkt. 70, ¶¶ 5,11.   Jonas alleges essentially the same claims for fraud, conspiracy to commit fraud, and legal malpractice against Erickson that he asserts against Rhoades.  Dkt. 70, ¶¶ 60-65; 69-74.  Jonas accuses Stelling of wrongfully selling real property owned by Blacktail Mountain pursuant to the "illegal" receivership order, and brings claims against him under 42 U.S.C. § 1983 and for wrongful conversion.  Dkt. 70, ¶¶ 79-91.

the managing member of Blacktail Mountain.

Approximately two months ago, the Receiver Defendants moved to dismiss Blacktail Mountain on the ground that, like all artificial entities, a limited liability corporation may appear in federal court only through licensed counsel.  This Court agreed, and by order dated June 13, 2013, gave Blacktail Mountain until July 10, 2013, within which to have an attorney authorized to appear before this Court enter an appearance on its behalf.  Dkt. 15.  The Court denied the Receiver Defendants' motion to dismiss subject to renewal in the event Blacktail Mountain failed to enter an appropriate appearance by July 10, 2013.  Dkt. 15.

That deadline passed without the appearance of any counsel on Blacktail Mountain's behalf, and the Receiver Defendants renewed their motion to dismiss on July 12, 2013.  Dkt. 30.  On August 20, 2013, however attorney Phillip J. DeFelice entered an appearance on behalf of Blacktail Mountain.  Dkt. 77. Although Blacktail Mountain missed the court imposed deadline for securing counsel by several weeks, it has at least arguably cured the deficiency Defendants cite as the basis for their motion to dismiss.

But Defendants also move to dismiss all claims by Blacktail Mountain and Jonas based on *Rooker-Feldman*, collateral estoppel, and res judicata. As discussed at length below, all of Jonas's claims should be dismissed  based on the

*Rooker-Feldman* doctrine, collateral estoppel, and/or res judicata. Jonas's claims are identical to Blacktail Mountain's in every respect. Because Jonas identifies himself on all his pleadings as the managing member of Blacktail Mountain, the Court finds that he and Blacktail Mountain are in privity for purposes of collateral estoppel and res judicata. Because Blacktail Mountain is in privity with Jonas, its claims are barred by res judicata and collateral estoppel for the same reasons that Jonas's are. *See e.g. McDaniel v. State*, 208 P.3d 817, 825-26 (Mont. 2009) (collateral estoppel applies if the party against whom preclusion is asserted was a party or in privity with a party to the prior adjudication); *Wamsley v. Nodak Mutual Ins. Co.*, 178 P.3d 102, 114 (Mont. 2008) (res judicata applies to parties and their privies). And to the extent Jonas's claims are barred by *Rooker-Feldman* as discussed below, Blacktail Mountain's claims suffer the same fate.

## III.   <u>Jonas's Motion to Disqualify Defense Counsel and Request for a Stay</u>

On July 16, 2013, Jonas filed a motion to disqualify defense counsel pursuant to Federal Rule of Civil Procedure 83 and Local Rule 83.2. Two days later, Jonas amended his motion to include a request for an order staying these proceedings pending a decision on his motion to disqualify. Jonas argues that Rhoades and co-counsel Robert Erickson are operating under a conflict of interest because they will be material witnesses at trial. According to Jonas, if Rhoades

and Erickson testify "truthful[ly] about the illegality of the state court enforcement orders," they "will cause the case to be proven against" their own clients and Rhoades' co-Defendants. Dkt. 43, at 8. Jonas claims that Rhoades will have to encourage his clients and co-Defendants "to take an untruthful defense inconsistent with the law, in order to defend himself" and maintains that those co-Defendants will "have a viable cross-claim against Rhoades and his law firm for his tortuous *[sic]* conduct which led to their wrongful actions." Dkt. 43, at 9-10.

As a general rule, however, courts will not disqualify counsel on the grounds of conflict of interest unless a client or former client moves for disqualification. *Kasza v. Browner*, 13 F.3d 1159, 1171 (9th Cir. 1998) (*quoting In re Yarn Processing Patent Validity Litigation*, 530 F.3d 83, 88-89 (5th Cir. 1976)). *See also Hechavarria v. City and County of San Francisco*, 463 Fed. App. 632, 633 (Dec. 22, 2011) (unpublished). Because Jonas is not, and never has been, a client of Rhoades or Erickson, he does not have standing to seek their disqualification based on an alleged conflict of interest.

Even if Jonas did have standing, his motion would fail because it is premised on arguments that he is barred from making. Jonas's basic theory in seeking disqualification is that Rhoades and Erickson knew the state court's charging and receivership orders were illegal, and if they testify to that effect at

trial they will effectively prove the case against their own clients.  Jonas also

believes that those clients have viable cross-claims against Rhoades and Erickson

for causing them to enforce the allegedly illegal charging and receivership orders.

Jonas fails to explain how these alleged conflicts would have any adverse effect on

him in this litigation.  In any event, as discussed below, Jonas is barred by

principles of collateral estoppel and res judicata from challenging the charging and

receivership orders.   Because Jonas cannot challenge those orders on the grounds

he has raised, there is no basis for the conflict of interest he alleges and no basis

for disqualifying defense counsel.  Jonas's motion and amended motion to

disqualify defense counsel are denied accordingly, and his request for a stay is

denied as  moot.

IV.     **Linda's Motion to Set Aside Default**

        Jonas filed his original Complaint on May 13, 2013, and an Amended

Complaint on May 28, 2013.[3]  Dkt. 1, 9.  As of July 16, 2013, Linda had not filed

an answer and Jonas requested entry of default pursuant to Federal Rule of Civil

Procedure 55(a).  Based on the dates of service set forth in Jonas's supporting

---

[3]  As discussed below near the end of these Findings & Recommendation,
the amendments incorporated in the Second Amended Complaint that Jonas filed
on August 16, 2013, have no substantive effect on the analysis or outcome of the
several pending motions.

affidavit, the Clerk of Court entered default against Linda on July 16, 2013. Dkt. 39.

Linda moves to set aside the entry of default pursuant to Rule 55(c) on three grounds. First, she argues she was never properly served with process, and so was never subject to default. Second, she maintains the entry of default is void because she appeared in the case by way of a motion to dismiss before Jonas filed his request for entry of default. Finally, Linda argues that even if default was properly entered, it should be set aside for good cause. Because it is dispositive, the Court begins with Linda's third and final argument.

Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause...." Fed. R. Civ. P. 55(c). Whether to set aside the entry of default is within the court's discretion. *See O'Connor v. State of Nev.*, 27 F.3d 357, 364 (9th Cir. 1994). In determining whether "good cause" is present, the court must consider three factors: "'(1) whether the plaintiff will be prejudiced, (2) whether the defendant has a meritorious defense, and (3) whether culpable conduct of the defendant led to the default." *Brandt v. American Bankers Ins. Co. of Florida*, 653 F.3d 1108, 1111 (9th Cir. 2011) (*quoting Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984)).

These factors are disjunctive, which means that the court is free to deny a

motion to set aside an entry of default "if any of the three factors [is] true." *Franchise Holding II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925-26 (9ᵗʰ Cir. 2004). The court is not required to do so, however, and may, in the exercise of its discretion, set aside a default even if it finds that one of the "good cause" factors is true. *Brandt*, 653 F.3d at 1111-12 (setting aside default notwithstanding fact that defendant acted culpably).

Entering "judgment by default is a drastic step," and one that the Ninth Circuit cautions is "appropriate only in extreme circumstances." *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9ᵗʰ Cir. 2011) (*quoting Falk*, 789 F.2d at 463). As a general rule, "a case should, whenever possible, be decided on the merits." *Mesle*, 615 F.3d at 1091 (*quoting Falk*, 789 F.2d at 463). "Where timely relief is sought from a default...and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default...." *O'Connor*, 27 F.3d at 364 (*quoting Mendoza v. Wight Vineyard Management*, 783 F.2d 941, 945 (9ᵗʰ Cir. 1986)). Nonetheless, the party seeking to set aside the entry of default bears the burden of showing that the "factors favor vacating the judgment." *TCI Group Life Ins. Plan v. Knoebber*, 244

F.3d 691, 696 (9th Cir. 2001).[4]

## A.    Prejudice

Linda convincingly argues that Jonas will not suffer any prejudice if the entry of default is set aside.

"To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case" or "being forced to litigate on the merits." *TCI Group*, 244 F.3d at 701.  The appropriate standard for the court to consider "is whether plaintiff's ability to pursue his claim will be hindered. " *TCI Group* 244 F.3d at 701. Any delay caused by the default "must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *TCI Group*, 244 F.3d at 701 (*citation omitted*).

Applying this standard here, there is no evidence that Jonas will be prejudiced if the entry of default is set aside.  As it happened, Linda appeared in the case through counsel and filed her motion to dismiss a few hours before the clerk entered her default on July 16, 2013.  Dkt. 33, 34.  Linda moved to set aside

---

[4] The Ninth Circuit views the "good cause" required for relief from the entry of default under Rule 55(c) and the "excusable neglect" required to set aside a default judgment under Rule 60(b)(1) as generally the same. *TCI Group*, 249 F.3d at 696; *see also Franchise Holdings II*, 375 F.3d at 926.

the default two days later. Dkt. 40. Even assuming, without deciding, that Linda's appearance in the case was untimely, there is nothing to suggest that such a short delay will have any prejudicial effect on Jonas's ability to pursue his claims. Nor will it result in any tangible harm, such as loss of evidence, discovery difficulties, or a greater opportunity for fraud or collusion. Notwithstanding the multitude of motions that have been filed thus far, this case is still in its earliest stages and Jonas will not be prejudiced if the default entered against Linda is set aside.

## B. Meritorious Defenses

A party seeking to set aside a default "must present specific facts that would constitute a defense." *TCI Group*, 244 F.3d at 700 (citations omitted). As described by the Ninth Circuit, this burden is not an "extraordinarily heavy" one. *TCI Group*, 244 F.3d at 700. "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense." *Mesle*, 615 F.3d at 1094 (*quoting TCI Group*, 244 F.3d at 700).

On the same day that default was entered against her, Linda moved to dismiss the claims against her on several grounds. As discussed at length below, that motion is well-taken. It can safely be said, then, that Linda has raised potentially meritorious defenses to Jonas's claims. This factor thus weighs heavily in favor of setting aside the default.

## C.    Culpability

Finally, there is no evidence that Linda acted culpably in allegedly failing to timely answer.  A defendant's conduct is considered "culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Group*, 244 F.3d at 697 (*quoting Alan Neuman Productions, Inc. v. Albright*, 862 F.2d 1388, 1292 (9th Cir. 1988)).  "[T]he term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an 'intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process.'" *Mesle*, 615 F.3d at 1092 (*quoting TCI Group*, 244 F.3d at 697).

Here, there is no evidence that Linda has acted with any bad faith intent to take advantage of Jonas, interfere with judicial decision making, or otherwise manipulate the legal process.  Even assuming that Linda's conduct was somehow culpable, the first two *Falk* factors weigh conclusively in favor of setting aside the default.   Linda has met her burden of showing she has potentially meritorious defenses and setting aside the entry of default will not cause Jonas  any prejudice. Linda's motion to set the default aside should be granted accordingly.

**V.    Receiver Defendants' Motion to Dismiss Based on Civil Immunity**

The Receiver Defendants move to dismiss Jonas's claims on the ground that they are entitled to absolute immunity as court appointed judicial officers.  The motion is well-taken.

Although they do not say so in their moving papers, the Receiver Defendants are presumably seeking dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A cause of action may be dismissed under Rule 12(b)(6) when it asserts a legal theory that is not cognizable as a matter of law, or if it fails to allege sufficient facts to support an otherwise cognizable legal claim. *SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996).

To withstand such a motion, "the plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. Sept. 26, 2008)(*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007)).  While the plaintiff need not include detailed factual allegations, the complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 127 S.Ct. at 1964-65.  In determining whether the plaintiff has satisfied this burden, the court accepts "all facts alleged in the complaint as

true," as well as reasonable inferences to be drawn from them, and "constru[es] them in the light most favorable to the plaintiff." *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004). However, the court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Cholla Ready Mix*, 382 F.3d at 973.

While the court's review is primarily confined to the pleadings, the court may consider "matter of public record" that are subject to judicial notice. *See Lee*, 250 F.3d at 688-89. Thus, review of the pending motion is informed by the many state court orders, opinions, and filings over which this Court takes judicial notice.

Judge Charles B. McNeil is the state district court judge who has thus far presided over Linda's lawsuit to domesticate and collect on the New Jersey judgments in Montana. Judge McNeil appointed Mungas as receiver, and Mungas hired the other Receiver Defendants to act as his agents and assist with the sale of Blacktail Mountain's assets. Jonas brings claims against the Receiver Defendants for wrongful conversion and violations of 42 U.S.C. § 1983. Jonas alleges that because Mungas is a court appointed receiver, he was at all times acting under color of state law, as were the other Receiver Defendants by virtue of the fact that they were in turn acting as Mungas's agents. Dkt. 9. ¶¶ 80-82. Jonas's wrongful conversion and § 1983 claims are premised on the theory that the Montana district

court's 2010 charging and receivership orders were "illegal," and that the Receiver

Defendants' conduct pursuant to those orders is thus actionable. Jonas also asserts

an independent claim against Mungas for fraud and conspiracy to commit fraud.

Jonas alleges that Mungas conspired with Rhoades, Linda, and Linda's counsel in

the New Jersey litigation to domesticate and collect on what he knew were

"fraudulent and false judgments." Dkt. 9, ¶64.

The Receiver Defendants maintain that Jonas fails to state a claim because

they are entitled to the same immunity enjoyed by Judge McNeil. For support,

they point to a long line of cases holding that judicial immunity extends to court-

appointed receivers and their agents. *See e.g. New Alaska Development Corp. v.*

*Guetschow*, 869 F.2d 1298, 1302-03 (9th Cir. 1989); *Coleman v.*

*Schwartzenegger*, 2007 2007 WL 4276554 *1 (E.D. Cal. Nov. 29, 2007); *Davis v.*

*Bayless*, 70 F.3d 367, 373 (5th Cir. 1995); *Kermit Const. v. Banco Credito Y*

*Ahorro Poncenco*, 547 F.2d 1,2 (1st Cir. 1976); *Friedlander v. Cook*, 2007 WL

5685361, *2 (D.N.M. Sept. 30, 2007); *Smallwood v. United States,* 358 F.Supp.

398, 404 (E.D. Mo. 1973) *aff'd* 486 F.2d 1407 (8th Cir. 1973). The prevailing rule

is that "[c]ourt appointed receivers act as arms of the court and are entitled to

share the appointing judge's absolute immunity provided that the challenged

actions are taken in good faith and within the scope of the authority granted to the

receiver." *Davis*,70 F.3d at 373.

Jonas does not dispute the legal principle that judicial immunity extends to court-appointed receivers and their agents. Nor does he dispute that Mungas was a court-appointed receiver and the other Receiver Defendants were at all times acting as Mungas's agents. As pointed out above, he alleges as much in his pleadings.

Jonas instead argues that Judge McNeil is not entitled to judicial immunity, which means that the Receiver Defendants are not entitled to the protective cloak of immunity either. He maintains that, like Judge McNeil, the Receiver Defendants are not entitled to immunity because they acted in the complete absence of any jurisdiction over Blacktail Mountain.

This Court has already held in the related case of *Edwin Jonas v. Ronald Waterman et. al,* CV-13-16-M-DLC-JCL (Dkts. 28 & 53), that Judge McNeil is entitled to judicial immunity as the presiding judge in the state court action. Jonas's argument that the Receiver Defendants are not entitled to judicial immunity because they were acting in the complete absence of any jurisdiction essentially mirrors the argument he made in opposition to Judge McNeil's motion to dismiss based on judicial immunity. That argument was rejected by the Court in its Findings & Recommendation dated March 25, 2013, and the June 5, 2013,

Order adopting those Findings & Recommendation. *Jonas v. Waterman et al,* CV-13-16-M-DLC-JCL, Dkts. 28 & 53. The Court hereby adopts and incorporates those rulings.

Jonas apparently claims the Receiver Defendants were acting in bad faith because they knew the charging and receivership orders pursuant to which their conduct was authorized were illegal. As discussed below, however, Jonas is barred by principles of collateral estoppel and res judicata from challenging the validity of the charging and receivership orders.

Because the Receiver Defendants share in Judge McNeil's immunity, Jonas's claims are properly dismissed. The Receiver Defendants' motion to dismiss should be granted accordingly, leaving Jonas's claims against Linda and the Attorney Defendants.

## VI.   <u>Motions to Dismiss</u>

The Receiver Defendants also move to dismiss all claims by Jonas and Blacktail Mountain (hereinafter referred to collectively as "Jonas") based on the *Rooker-Feldman* doctrine, the domestic relations exception to federal jurisdiction, and the doctrines of res judicata and collateral estoppel. Linda and the Attorney Defendants have filed identical motions and incorporate the arguments presented by the Receiver Defendants as their own. Dkt. 21, 33.

## A.    Legal Standards

Once again, Defendants do not identify the Rule pursuant to which they are seeking dismissal.  To the extent they move for dismissal based on res judicata and collateral estoppel, the Court will construe Defendants' motion as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief may be granted.  This component of Defendants' motion to dismiss is thus subject to the same legal standard discussed above in conjunction with the Receiver Defendants' motion to dismiss based on judicial immunity.

To the extent Defendants seek dismissal for lack of subject matter jurisdiction based on the *Rooker-Feldman* doctrine and the domestic relations exception to federal jurisdiction, their motion is properly construed as one pursuant to Rule 12(b)(1).   A defendant may pursue a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) either as a facial challenge to the allegations of a pleading, or as a substantive challenge to the facts underlying the allegations.  *Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).   A facial challenge to the jurisdictional allegations is one which contends that the allegations "are insufficient on their face to invoke federal jurisdiction."   *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).   "By contrast, in a factual attack, the challenger disputes the truth of

the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.

Defendants' challenge in this case is a facial one. It is their position that Jonas's allegations are insufficient to invoke federal jurisdiction as a matter of law in light of the *Rooker-Feldman* doctrine and the domestic relations exception to federal jurisdiction. Resolution of such a facial challenge to jurisdiction depends on the allegations in the complaint, and does not involve the resolution of a factual dispute. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). In a facial challenge, the court must assume the allegations in the complaint are true and "draw all reasonable inferences in [plaintiff's] favor." *Wolfe*, 392 F.3d at 362; " *Whisnant v. U.S.*, 400 F.3d 1177, 1179 (9th Cir. 2005). Even in a facial challenge, however, the court may look beyond the face of the pleadings and consider "exhibits attached to the complaint, matters that subject to judicial notice, [and] documents necessarily relied on by the complaint and whose authenticity no party questions." *Bautista-Perez v. Holder*, 681 F.Supp.2d 1083, 1087 (N.D. Cal. 2009) (*citing Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). *See also Barron v. Riech*, 13 F.3d 1370, 1377 (9th Cir. 1994). Thus, review of Defendants' motion is informed by the many state court orders, opinions, and filings over which this Court takes judicial notice. And where, as here, a plaintiff is

proceeding pro se, the court must liberally construe the allegations in the complaint. *Wolfe*, 392 F.3d at 362.

### B. *Rooker-Feldman*

Defendants move to dismiss Jonas's claims on the threshold basis that this Court lacks subject matter jurisdiction under the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine rests on the notion that federal courts are courts of limited jurisdiction, and arises more specifically out of 28 U.S.C. § 1257, which gives the United States Supreme Court the exclusive jurisdiction to review decisions rendered by a state's highest court. *See e.g. Carmona v. Carmona*, 544 F.3d 988, 995 (9th Cir. 2008). The doctrine "stands for the relatively straightforward principle that federal district courts do not have jurisdiction to hear de facto appeals from state court judgments." *Carmona*, 544 F.3d at 995. Simply put, "the *Rooker-Feldman* doctrine bars suits 'brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Carmona*, 544 F.3d at 995 (*quoting Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284 (2005)). For *Rooker-Feldman* to apply, the state court proceedings must have ended in a final judgment before the federal litigation commenced. *See e.g. Exxon Mobil*, 544 U.S. at 291

-25-

(explaining that the doctrine only applies where the "losing party in state court filed suit in federal court after the state proceedings ended").

While "routine application" of the *Rooker-Feldman* doctrine "is exceedingly easy," that application becomes more difficult "when a disappointed party seeks to take not a formal direct appeal, but rather its de facto equivalent, to a federal district court." *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003). According to the Ninth Circuit, "[a] suit brought in federal court is a 'de facto appeal' forbidden by *Rooker-Feldman*, when 'a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Carmona*, 544 F.3d at 284 (*quoting Noel*, 341 F.3d at 1154). Such a "de facto appeal" is distinguishable from a case in which the plaintiff "asserts as a legal wrong an allegedly illegal act or omission by an adverse party." *Carmona*, 544 F.3d at 995. *Rooker-Feldman* would not bar the latter type of case. *Carmona*, 544 F.3d at 995 (*citing Noel,* 341 F.3d at 1164).

Where the federal district court finds itself dealing with a suit that is, in part, a forbidden de facto appeal from a final state court judgment, it "must refuse to hear the forbidden appeal." *Noel*, 341 F.3d at 1158. "As a part of that refusal, [the court] must also refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial

decision." *Noel*, 341 F.3d at 1158.

The "inextricably intertwined" test applies only when a "federal plaintiff is seeking to bring a forbidden de facto appeal." *Noel*, 341 F.3d at 1158. In other words, "[t]he federal suit is not a forbidden de facto appeal because it is 'inextricably intertwined' with something," but is "simply a forbidden de facto appeal." *Noel*, 341 F.3d at 1158. If the court determines that the plaintiff is seeking to bring a forbidden de facto appeal, the court must not decide any issues that are "'inextricably intertwined' with the state court judicial decision from which the forbidden de facto appeal is brought." *Noel*, 341 F.3d at 1158.

Defendants take the position that Jonas's current lawsuit is a forbidden de facto appeal from the decisions entered against him by the courts of New Jersey, Florida, and Montana. To the extent Jonas's claims in this case represent an attempt on his part to seek review of the proceedings in the New Jersey courts Defendants are correct.

The New Jersey court's judgments are final. The 2006 New Jersey judgments that Linda ultimately sought to enforce in Montana were affirmed by the Appellate Division of the Superior Court of New Jersey in 2008. *Jonas v. Jonas*, 2008 WL 239069 (N.J. Super. A.D. January 30, 2008). The court held that Jonas's claims were properly dismissed based on the fugitive disentitlement in

light of his "obstinate refusal" to comply with or respond to court orders. *Jonas*, 2008 WL 23906 *2. Jonas did not appeal that decision to the New Jersey Supreme Court. *Jonas III*, 2013 WL 3810598 * 1.

Jonas did, however, move to vacate several orders entered in the case prior to 2008, including the 2006 judgments. *Jonas v. Jonas*, 2011 WL 6820244 *1 (N.J. Super. A.D. December 29, 2011). The New Jersey Superior Court denied Jonas's motion to vacate on September 17, 2010, and Jonas appealed. *Jonas*, 2011 WL 680244 *1. The intermediate appellate court affirmed,[5] and in April 2012 the Supreme Court of New Jersey denied Jonas's petition for certification. *Jonas v. Jonas*, 210 N.J. 109 (2012). The New Jersey judgments are final, and as far this Court can tell from the materials presented by the parties, those legal proceedings have concluded.[6]

---

[5] *Jonas*, 2011 WL 680244.

[6] Unlike the New Jersey state court proceedings, it appears the Montana proceedings are ongoing. Moreover, because *Rooker-Feldman* applies only to "state-court judgments rendered before the district court proceedings commenced," it is significant the Montana Supreme Court did not issue its decision in *Jonas III* until July 23, 2013, well after Jonas filed his complaint in this case. Defendants do not discuss whether *Rooker-Feldman* would apply under these circumstances to preclude Jonas from challenging the Montana Supreme Court's decisions in *Jonas I, II* and/or *III.* The Court need not resolve this issue, however, because Jonas's claims based on the charging and receivership orders issued by the Montana district court are otherwise barred by res judicata and collateral estoppel.

It is clear from the face of Jonas's Amended Complaint that this lawsuit is, at least in part, a forbidden de facto appeal from the New Jersey judgments. Most of Jonas's claims against Linda are nothing more than an attempt on his part to overturn the New Jersey court's decisions upholding the validity of the judgments entered against him. For example, Jonas alleges in his claim for fraud and conspiracy to commit fraud that Linda conspired with her attorney in the New Jersey litigation to "mislead" and "induce" the trial judge to enter the 2006 judgments, even through she knew that Jonas had already satisfied his alimony and child support obligations. Dkt. 9, ¶¶ 61-65. Jonas also brings a claim for breach of fiduciary duty in which he accuses Linda of "misappropriating, embezzling, converting, and distributing" funds from the constructive trust established by the New Jersey court and failing to "account to the court for the distributions of trust property as satisfying [his] support obligations." Dkt. 9, ¶¶ 56-59. Jonas's conversion, misappropriation and embezzlement claim similarly alleges that Linda wrongfully diverted money to herself from the New Jersey trust account. Dkt. 9, ¶ 67. Because of Linda's alleged conduct, Jonas maintains the New Jersey judgments are illegal. It is difficult to see how these claims can be characterized as anything other than a de facto appeal from the New Jersey court's decisions upholding the validity of the 2006 judgments.

Jonas cannot prevail on these claims, and this Court cannot grant any of the relief he requests, without effectively reversing the final judgments of the New Jersey courts. These claims thus represent nothing more than an impermissible attempt to circumvent the New Jersey courts' decisions upholding the validity of the 2006 judgments.

It is worth noting that the Ninth Circuit has recognized a limited exception to application of the *Rooker-Feldman* doctrine in cases involving alleged extrinsic fraud. *See Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir 2004)." "Extrinsic fraud is conduct which prevents a party from presenting his claim in court." *Kougasian*, 359 F.3d at 1140 (*quotoing Wood v. McEwen,* 644 F.2d 797, 801 (9th cir. 1981)). The exception applies only when conduct by an adverse party in the state litigation prevented a party from presenting a claim. *Reusser v. Wachovia Bank*, 525 F.3d 855, 859 (9th Cir. 2008). While Jonas maintains that Linda misled the New Jersey court in her pursuit of the 2006 judgments, there is nothing to suggest that he was somehow prevented from making that argument to the New Jersey court before it entered the judgments is now seeking to overturn. The extrinsic fraud exception to the *Rooker-Feldman* doctrine is thus inapplicable.

To the extent Jonas challenges the New Jersey judgments, this Court is without jurisdiction to entertain Jonas's claims under *Rooker-Feldman*. Even if

*Rooker-Feldman* does not apply, all of Jonas's claims against both Linda and the Attorney Defendants are nonetheless barred by principles of collateral estoppel and/or res judicata.

### B.    Collateral Estoppel

Linda and the Attorney Defendants argue that Jonas's claims against them should be dismissed because those claims are all premised on issues that he is collaterally estopped from raising in light of the Montana Supreme Court's decisions in the state court litigation.  The Court agrees.

It is well-established that under the federal full faith and credit statute, 28 U.S.C. § 1738, "federal courts must give state court judgments the preclusive effect that those judgments would enjoy under the law of the state in which the judgments was rendered." *Mack v. Kuckenmeister, CPA, MST*, 619 F.3d 1010, 1016 (9th Cir. 2010).  *See Noel v. Hall*, 341 F.3d 1148, 1159 (9th Cir. 2003).  Thus, in considering the preclusive effect of a state court judgment, § 1738 requires federal courts to apply the law of collateral estoppel as adopted by the state from which the judgment emerged.  *Engquist v. Oregon Dept. of Agriculture*, 478 F.3d 985, 1007 (9th Cir. 2007).

Collateral estoppel "embod[ies] a judicial policy that favors a definite end to litigation[.]"  *Baltrusch v. Baltrusch*, 130 P.3d 1267, 1273 (Mont. 2006).   The

doctrine bars serial litigation "of an issue that has been litigated and determined in a prior suit." *Id*. *See also McDaniel v. State*, 208 P.3d 817, 825 (Mont. 2009).

Montana courts apply the following four-part test to determine whether collateral estoppel bars the re-litigation of a particular issue:

> 1. Was the issue decided in the prior adjudication identical to the issue raised in the action in question?
>
> 2. Was there a final judgment on the merits in the prior adjudication?
>
> 3. Was the party against whom preclusion is now asserted a party or in privity with a party to the prior adjudication?
>
> 4. Was the party against whom preclusion is now asserted afforded a full and fair opportunity to litigate the issue which may be barred?

*McDaniel v. State*, 208 P.3d 817, 825-826 (Mont. 2009). All four elements must be met before collateral estoppel may be invoked. *McDaniel*, 208 P.3d at 826.

### 1.    Attorney Defendants

Jonas brings two claims against Rhoades. For his first claim, Jonas accuses Rhoades of conspiring with Linda to domesticate and collect on what Rhoades knew or should have known "were fraudulent and false judgments" issued by the New Jersey court. Dkt. 9, ¶ 64. Jonas's second claim against Rhoades is one for legal malpractice. He alleges that Rhoades owed him a duty of care "as third party beneficiary to his representation" of Linda, and that Rhoades breached that duty

by: (1) domesticating and collecting on the 2006 New Jersey judgments "with full knowledge" that Linda "was committing a fraud" and that Jonas "owed no monies" to Linda; (2) seeking and prosecuting the charging and receivership orders "with full knowledge that the limited liability laws of Nevada and Montana prohibited the collection acts"; and (3) negligently supervising the court-appointed receiver, Defendant Craig Mungas, who is also an attorney at Rhoades' law firm. Dkt. 9, ¶¶ 70-73.

To determine whether the issues raised in Jonas's claims against Rhoades are the same as those he presented in the state court action, the court should "compare the pleadings, evidence, and circumstances surrounding the two actions." *Baltrusch v. Baltrusch*, 130 P.3d 1267, 1276 (Mont. 2006). The bar provided for by collateral estoppel "extends to all questions essential to the judgment and actively determined by a prior valid judgment" and "prevents relitigation of *determinative* facts which were actually or necessarily decided in a prior action." *Baltrusch*, 130 P.3d at 1276 (*citing Haines Pipeline Const., Inc. v. Montana Power Co.*, 876 P.3d 632, 636 (Mont. 1994)). "A litigant cannot avoid preclusion simply by reframing the same issues or raising novel contentions." *Baltrusch*, 130 P.3d at 1276. Collateral estoppel thus applies "when the 'issues are so intertwined that to decide the issue before it, the District Court would have

to rehear the precise issue previously decided...." *Baltrusch*, 130 P.3d at 1277

(*quoting Martelli v. Anaconda-Deer Lodge County*, 852 P.2d 579, 581 (Mont. 1993)).

It is safe to say under this standard that the first collateral estoppel element is satisfied here. Jonas's claims against Rhoades are premised on issues addressed by the Montana Supreme Court in *Jonas I*, *II*, and/or *III*. Jonas's fraud claim and the first component of his legal malpractice claim are necessarily premised on Jonas's theory that the 2006 New Jersey judgments are unenforceable because Linda falsely represented to the New Jersey court that Jonas's support obligations were unpaid. Jonas raised the same issue in *Jonas I*, wherein he argued "that the 2006 New Jersey judgments were satisfied by prejudgment transfers of money and property held in constructive trust for Linda." *Jonas I,* 2010 WL 4527053 *2. The Montana Supreme Court held that Jonas's claim was "barred by res judicata" and also noted that it appeared the issue had been "actually litigated" in the New Jersey courts. *Jonas I*, 2010 WL 4527052 *2. The Court essentially reaffirmed the same thing in *Jonas II*, holding that Jonas was "precluded by principles of res judicata from repeating his challenges to New Jersey's 2006 Judgment in the courts of Montana." *Jonas II*, 2012 WL 1699951 *2.

The second and third components of Jonas's legal malpractice claims are also premised on issues already addressed by the Montana Supreme Court. In *Jonas III,* Jonas "advanced new arguments for setting aside the charging order and the order appointing the receiver, including that they were entered ex parte, that the receiver was not statutorily eligible, and that the seizure and sale of [Blacktail Mountain] assets [was] against Montana and Nevada law governing limited liability corporations." *Jonas III*, 2013 WL 3810598 *2. Jonas's legal malpractice claim is likewise premised on the same theories – that the receiver's conduct was wrongful, and that charging and receivership orders authorizing the seizure and sale of Blacktail Mountain assets violated Montana and Nevada law. The Montana Supreme Court noted that Jonas had foregone multiple opportunities to challenge the charging order and appointment of a receiver, and so held that they had become the law of the case. *Jonas III*, 2013 WL 3810598 *4. Because Jonas's claims against Rhoades are premised on issues that are the same as those litigated in the state court action, the first element of collateral estoppel is satisfied.

The second element requiring a final judgment on the merits is also met. The Montana Supreme Court has adopted a "relaxed requirement of finality for purposes of applying collateral estoppel." *Baltrusch v. Baltrusch*, 130 P.3d 1267,

1275 (Mont. 2006). Even if a judgment or order "has not been entered as final," it may nonetheless be entitled to preclusive effect if "the decision was adequately deliberated and firm," the "parties were fully heard," the "court supported its decision with a reasoned opinion" and "the court's prior decision was subject to appeal or was in fact reviewed on appeal." *Baltrusch*, 130 P.3d at 1276 (adopting *Restatement (Second) of Judgments* § 13, comment (g) (1982)).

The Montana Supreme Court's decisions in *Jonas I*, *II*, and *III* were undoubtedly final decisions on the merits for purposes of collateral estoppel. *Jonas I* affirmed the trial court's decision denying Jonas's motions to reconsider the charging and receivership orders. *Jonas II* affirmed the denial of his Rule 60(b) motion for relief from the 2006 New Jersey judgments, and *Jonas III* affirmed the denial of Jonas's motion to set aside the charging order, appointment of receiver, foreclosure of the lien, and sale of Blacktail Mountain. In all three decisions, the Montana Supreme Court upheld the validity of the 2006 New Jersey judgments and the 2010 charging and receivership orders. Those decisions from the state's highest court finally adjudicated the issues and claims raised therein, and are entitled to preclusive effect. To hold otherwise would be to permit what the *Baltrusch* court cautioned against, and endorse Jonas's persistent attempts to enmesh his "opponents and the court system in tangles of duplicative litigation."

*Baltrusch*, 130 P.3d at 1275.

The third and fourth collateral estoppel elements are also satisfied. Jonas was a party to state court litigation in *Jonas I, II*, and *III*, which means that "the party against whom preclusion is now asserted" was "a party to the prior adjudication." *McDaniel*, 208 P.3d at 825-26. Finally, as the party attempting to defeat a defense of collateral estoppel, Jonas bears the burden of showing that he was somehow deprived of the ability to fully and fairly litigate. *McDaniel*, 208 P.3d at 829. Jonas has not made such a showing. To the contrary, the fact that Jonas pursued three appeals to the Montana Supreme Court demonstrates that the was most certainly afforded a full and fair opportunity to litigate the issues he attempts to raise here.

Because Jonas's fraud and legal malpractice claims against Rhoades are premised on issues that he is collaterally estopped from raising, they should be dismissed. This means that Jonas's legal malpractice claim against Sullivan Tabaracci, which is premised solely on a theory of respondeat superior liability, also fails to state a claim upon which relief may be granted and should also be dismissed. Jonas's claims against Linda are similarly barred by principles of collateral estoppel.

2.    <u>Linda</u>

Jonas alleges multiple claims against Linda, all of which effectively challenge the validity of the 2006 New Jersey judgments and/or the Montana district court's 2010 charging and receivership orders. Jonas's first claim against Linda is for breach of fiduciary duty. He alleges that Linda breached her fiduciary duties by "misappropriating, embezzling, converting, and distributing" funds from the constructive trust established by the New Jersey court and failing to "account to the court for the distributions of trust property as satisfying [his] support obligations." Dkt. 9, ¶¶ 56-59. Jonas also alleges a cause of action against Linda for conversion, misappropriation and embezzlement. He accuses her of wrongfully diverting money to herself from the New Jersey trust account. Dkt. 9, ¶ 67.

Jonas's second claim against Linda is for fraud and conspiracy to commit fraud. He asserts that Linda conspired with her attorney in the New Jersey litigation to "mislead" and "induce" the trial judge to enter the 2006 judgments, even through she knew that Jonas had already satisfied his alimony and child support obligations. Jonas also alleges that Linda then conspired with the Attorney Defendants and Receiver Defendants to domesticate and collect on those judgments in Montana. Dkt. 9, ¶¶ 61-65.

Finally, Jonas brings a claim against Linda under 42 U.S.C. § 1983 on the apparent theory that she has at all time been acting under color of state law as a

court appointed trustee for the New Jersey constructive trust. He accuses Linda of making false representations to the courts in New Jersey and Montana, wrongfully seeking judgments against him in New Jersey, and wrongfully pursuing litigation to domesticate and enforce those judgments in Montana. Dkt. 9, ¶¶ 80-87

The first collateral estoppel element is satisfied because all of these claims necessarily implicate the question of whether the 2006 New Jersey judgments and the Montana court's charging and receivership orders are valid and enforceable. The Montana Supreme Court put those issues to rest in *Jonas I, II,* and *III.* As stated above, these decisions are final judgments for purposes of collateral estoppel and are entitled to preclusive effect. Jonas and Linda were both parties to that state court action, and Jonas was afforded a full and fair opportunity to litigate all of the issues raised. Because Jonas's claims against Linda are premised on issues that he is collaterally estopped from raising, they should be dismissed.

Even if Jonas's claims against Linda and the Attorney Defendants were not barred by collateral estoppel, they would be barred by the broader doctrine of res judicata.

### C.     Res Judicata

The doctrine of res judicata bars a party from re-litigating "a claim once final judgment has been entered." *Wiser v. Montana Board of Dentistry*, 251 P.3d

675, 676 (Mont. 2011). Once a final judgment has been entered, res judicata

applies if the following elements are satisfied:

> (1) the parties or their privies are the same; (2) the subject matter of the
> present and past actions is the same; (3) the issues are the same and relate to
> the same subject matter; (4) the capacities of the parties are the same [in
> reference] to the subject matter and the issues between them.

*Wiser*, 251 P.3d at 677.

Res judicata is broader that collateral estoppel in that it applies not only to

issues that were actually litigated, but precludes "claims that were or *could have*

*been* litigated in the first action." *Brilz v. Metropolitan General Ins. Co.*, 285 P.3d

494, 500 (Mont. 2012).

The res judicata law of New Jersey law is essentially the same as

Montana's, and requires that the following elements be satisfied for the doctrine to

apply:

> (1) the judgment in the prior action must be valid, final, and on the merits;
> (2) the parties to the later action must be identical to or in privity with those
> in the prior action; and (3) the claim in the later action must grow out of the
> same transaction or occurrence as the claim in the earlier one.

*McNeil v. Legislative Apportionment Com'n of State*, 828 A.2d 840, 859 (N.J.

2003 (*quoting Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 591 A.2d 592, 599

(N.J. 1991)). As in Montana, res judicata "applies not only to matters actually

determined in an earlier action, but to all relevant matters that could have been so

determined." *McNeil*, 828 A.2d at 859 (*quoting Watkins*, 591 A.2d at 599)).

To the extent Jonas's claims relate to the New Jersey court's judgments, the res judicata law of that state applies.[7]  And to the extent his claims relate to the Montana action, Montana law applies

### 1.    Attorney Defendants

Applying these standards here, the Court concludes that Jonas's fraud and legal malpractice claims are both barred.  Even under the more stringent final judgment standard applicable for purposes of res judicata, the Montana Supreme Court's decisions in *Jonas I*, *II*, and *III* are final judgments on the merits of Jonas's appeals challenging the validity of the 2006 New Jersey judgments and the Montana courts' charging and receivership orders.  The three decisions by Montana's highest court fully and finally resolved Jonas's sequential appeals and are entitled to res judicata effect.

The remaining elements of res judicata are also met.  Jonas was a party to the Montana litigation and appeared in the same individual capacity.  The two lawsuits both arise from the same subject matter, and the ultimate issues are the same.  Jonas could have added Rhoades and Sullivan Tabaracci as third-party

---

[7] The law of the states from which the judgments emerged controls for purposes of determining their res judicata effect. *Adam Bros. Farming, Inc. v. County of Santa Barbara*, 604 F.3d 1142, 1148 (9th Cir. 2010).

defendants in the state court action and pursued the same fraud and legal malpractice claims he alleges here. Because Jonas could have litigated his claims against the Attorney Defendants in *Jonas I, II* and/or *III*, those claims are barred in this action by res judicata. Jonas's claims against Linda are similarly barred.

      2.    <u>Linda</u>

All of Jonas's claims against Linda effectively challenge the validity of the 2006 New Jersey judgments and the Montana district court's 2010 charging and receivership orders, and are barred by principles of res judicata. As stated above, the Montana Supreme Court's decisions in *Jonas I, II*, and *III* are final judgments on the merits of Jonas's appeals and are entitled to preclusive effect. The New Jersey judgments are also final. Jonas and Linda were both parties to the Montana and New Jersey state court actions, and were litigating against each other in their individual capacities – just as they are here. The state court lawsuits involve the same subject matter and same ultimate issues faced by this Court, namely, the validity of the 2006 New Jersey judgments and the 2010 charging and receivership orders. The New Jersey and Montana courts have firmly and finally upheld the validity and enforceability of those judgments and orders. Jonas could have litigated his claims against Linda in state court before those judgments and orders became final. Because Jonas has had ample opportunity to fully litigate his claims

against Linda in the state court action, he is barred by principles res judicata from attempting to do so here.[8]

## VII.  Motion for Leave to file Second Amended Complaint

At the Rule 16 scheduling conference convened on August 14, 2013, the Court granted Jonas's motion for leave to file a Second Amended Complaint.  The amended pleading adds Rhoades' co-counsel, Robert Erickson, as an additional Attorney Defendant to his fraud and legal malpractice claims.  The Second Amended Complaint also names real estate agent Steve Stelling, individually and doing business as Stelling & Associates, as an additional Receiver Defendant to his § 1983 and wrongful conversion claims.  These most recent amendments do not change the outcome of any of the motions discussed above.  Jonas's fraud and malpractice claims against Erickson fail for the same reasons that his claims against Rhoades fail.  Jonas's claims against Stelling likewise fail on the same basis that his claims against the other Receiver Defendants fail.

## VIII.  Motion for Rule 11 Sanctions

Jonas has filed a motion for Rule 11 sanctions against Rhoades.  Dkt. 49. Jonas argues Rhoades "knew or should have known" that the New Jersey

---

[8] Because Defendants' motions to dismiss should be granted on the grounds set forth above, the Court need not also consider whether the domestic relations exception to federal jurisdiction applies.

judgments were not final and not on the merits, and that the doctrine of res judicata was thus inapplicable. Jonas maintains Rhoades "continued in a fraudulent and knowingly deceptive manner to persist in prosecuting the *Rooker-Feldman* motion as he did in Montana District Court in domesticating and enforcing a judgment he knew to be false and fraudulent." Dkt. 50, at 2.

Jonas's motion is entirely without merit. It would be an abuse of discretion to impose Rule 11 sanctions under the circumstances, and Jonas's motion is denied accordingly.

## IX.    Conclusion

For the reasons set forth above,

IT IS RECOMMENDED that:

(1) The Receiver Defendants' Renewed Motion to Dismiss Blacktail Mountain Ranch based on its failure to secure legal counsel be DENIED AS MOOT;

(2) Linda Jonas's Motion to Set Aside the Entry of Default (Dkt. 40) be GRANTED;

(3)    The Attorney Defendants' Motion to Dismiss Plaintiffs' claims based on *Rooker-Feldman*, collateral estoppel, and/or res judicata (Dkt. 21) be GRANTED ;

(4)     Linda Jonas's Motion to Dismiss Plaintiffs' claims based on *Rooker-Feldman*, collateral estoppel, and/or res judicata (Dkt. 33)  be GRANTED;

(5)     The Receiver Defendants' Motion to Dismiss Based on Civil Immunity (Dkt. 17) be GRANTED;

(6)     The Receiver Defendants' Motion to Dismiss based on *Rooker-Feldman*, collateral estoppel, and/or res judicata (Dkt. 19) BE DENIED AS MOOT;

(7)     Erickson's Motion to Dismiss based on *Rooker-Feldman*, collateral estoppel, and/or res judicata (Dkt. 73) be GRANTED;

(8)     Stelling's Motion to Dismiss based on *Rooker-Feldman*, collateral estoppel, and/or res judicata (Dkt. 75) be GRANTED .

IT IS ORDERED that:

(1) Jonas's Motion to disqualify counsel and amended motion to disqualify counsel (Dkt. 35, 42) are DENIED, and;

(2) Jonas's Objection to Judicial Notice and Request for hearing (Dkt. 53) is DENIED

(3) Jonas's Motion for Rule 11 Sanctions (Dkt. 49) is DENIED.

DATED this 21ST day of August, 2013

Jeremiah C. Lynch
United States Magistrate Judge